## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**PETRO-MARINE UNDERWRITERS, INC., AND DELTA ENERGY MANAGEMENT AND CONSULTANTS, LLC**

**CASE NO. 2:17-cv-09955-NJB-DEK**

**CHIEF JUDGE NANNETTE JOLIVETTE BROWN**

                              **Plaintiffs**

**vs.**

**MAGISTRATE JUDGE DANA M. DOUGLAS**

**COX OPERATING, LLC, AND COX OIL OFFSHORE, LLC**

                              **Defendants.**

### MCGRIFF, SEIBELS & WILLIAMS, INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER AND/OR TO QUASH SUBPOENAS AND FOR FEES AND COSTS

McGriff, Seibels & Williams of Texas, Inc. ("MSW"), a non-party to this litigation, submits this Memorandum in Support of its Motion for an order:

1. limiting the scope of (1) an initial September 27, 2018 (served October 1, 2018) Subpoena to Produce and Notice of Records Deposition ("Subpoena," Recs. 30-3, 30-4); and (2) an April 4, 2019 (dated and served) Supplemental Subpoena ("Supplemental Subpoena," Rec. 30-8) served on MSW by Plaintiffs Petro-Marine Underwriters, Inc. and Delta Energy Management and Consultants, LLC's ("Plaintiffs"); and

2. imposing a **mandatory** award of costs, expenses and attorney's fees incurred in:

   a.  bringing this motion

   b.  opposing Plaintiffs' separately filed motion for contempt (Rec. 30) against MSW relating to these subpoenas, which MSW has opposed (Rec. 37); and

   c.  responding to the subpoenas (with the limitations requested herein).

At the outset, and in the interest of efficiency and partial non-duplication, MSW incorporates by reference all the arguments and authorities in its opposition (Rec. 37), to the extent they relate to and inform the protective order requested in MSW's instant motion.

Moreover, MSW notes that pursuant to Rule 45(d)(2)(B)(ii), any Order issued by the Court with respect to Plaintiffs' Motion for Contempt "**must** protect [MSW,] who is neither a party nor a party's officer[,] from significant expense resulting from compliance." Likewise, Rule 26(c)(1)(B) authorizes the Court to impose costs of responding to discovery; and Rule 37(a)(5)(B) **requires** an award to MSW of its costs and fees incurred in opposing Plaintiffs' Motion for Contempt and/or in successfully limiting Plaintiffs' discovery (as requested herein). Accordingly, MSW seeks an award of its costs, expenses and fees relating to Plaintiffs' subpoenas.

## BACKGROUND

This case involves Plaintiffs' claims against Defendant concerning alleged placement of bonds in relation to certain Outer Continental Shelf ("OCS") oil and gas production assets. On October 2, 2018, Plaintiffs served MSW with the Subpoena.[1] MSW is an independent insurance agency (of which Defendant is a client/ customer), located in Houston, Texas and is not a party to this litigation. Per the Subpoena, MSW was commanded to produce documents on or before November 8, 2018, to Sternberg, Naccari & White, LLC located in New Orleans, Louisiana, which is well beyond the geographical limits specified in Fed. R. Civ. Proc. 45(c).[2] Despite Plaintiffs' procedural non-compliance, and in an effort to facilitate judicial economy, MSW agreed to respond to the Subpoena, but requested a brief extension until December 7, 2018.[3]

Plaintiffs' Subpoena and document request, however, was vague, overly broad, and unduly burdensome. For example, Request No. 1 states:

---

[1] Rec. 30-3; 30-4.

[2] *Id.; See* Fed. R. Civ. P. 45(c)(1) ("A subpoena may command…production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person.").

[3] Rec. 37-1 ( November 1, 2018 email exchange between counsel for MSW and Plaintiffs' counsel).

> Any and all correspondence, memoranda, notes, emails, text messages, letters, quotes, estimates, invoices, receipts, payments, checks, bank drafts, records, photos, videos, moving pictures, and any other record concerning or relating to surety bonding, including premiums and renewals on policies placed for Cox Operating. LLC and/or Cox Oil Offshore, LLC (hereinafter "the Cox Entities") and/or Chevron U.S.A., Inc. (hereinafter "Chevron") and/or Union Oil Company of California (hereinafter "Union Oil").[4]

Relatedly, although this case concerns only placement of surety bonds, Requests 2-5 and 7 sought "[a]ny and all **policies** [emphasis added]" as well as "[a]ny and all correspondence, memoranda, notes, emails, text messages, letters, invoices, payments and any other document…**relating to any policy** [emphasis added]" together with "[r]ecords of any and all payments received for [such] **policies**."[5]

Further, almost every request contained the catch-all inclusion of "any and all" documents. Additionally, Plaintiffs requests were ambiguous as they consistently requested information concerning "policies," and MSW was uncertain if Plaintiffs wanted policies or bonds as the two terms are not interchangeable.[6] Indeed, the only specific document request was Request No. 4, which stated: "Any and all policies relating to Your policy number SU13887." Due to the confusing and overly broad scope of Plaintiffs' requests, MSW was only able to identify and produce Performance Bond No. SU13887, as well as additional information concerning this document.[7] On December 7, 2018, MSW timely (pursuant to an agreed extension by Plaintiffs' counsel)[8] produced its objections and responses to Plaintiffs' Subpoena, together with its initial production of responsive documents.[9]

---

[4] Rec. 30-5.

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] *See* Rec. 37-1. *See also Shaw Grp., Inc. v. Zurich Am. Ins. Co.*, 2014 WL 1783955, at *4 (M.D. La. May 5, 2014) ("The serving party may agree to extend the deadline to respond to a subpoena, including the deadline to serve written objections [beyond the 14 days provided in Rule 45]…[and] extension of 'response' time [absent

Over three (3) months passed before counsel for Plaintiffs contacted undersigned counsel on March 13, 2019, regarding MSW's subpoena response.[10]   At no time prior to March 13th did Plaintiffs express any concerns or other issues with MSW's production.  In an email dated March 14, 2019, Plaintiffs' counsel identified, for the first time by specific number, two additional bonds that it was requesting records for:  Aspen Bond SU13888 and SU13889.[11]   These bonds were not originally identified in the Subpoena.  Plaintiffs' counsel also stated, "If possible, I'd like to work out this additional production without the necessity to prepare, issue, and serve a second subpoena"[12] - notwithstanding the procedural problem with the original subpoena, nor the problems with its vast overbreadth/irrelevance as noted in MSW's objections.

In an email dated March 18, 2019, counsel for Plaintiffs stated, "we are looking for the production of all correspondence related to McGriff's placement of Aspen Bonds SU 13887, SU13888, and SU13889 for Cox and any other bonds that McGriff secured for Cox from Aspen. This is inclusive of internal correspondence."[13]   Plaintiffs also requested in the March 18th email, "payment records, receipts, and records showing remittance to Aspen."[14]   This type of specificity was not contained in Plaintiffs' original Subpoena.

On March 22, 2019, undersigned counsel and counsel for Plaintiffs conferred regarding MSW's production and Plaintiffs' requests.  Based on the conversation, it was undersigned counsel's understanding that Plaintiffs were narrowing their request to the production of all

---

specification to the contrary] include[s] an extension of [the] time to object.").

[9] Rec. 30-5; Rec. 30-6.

[10] Rec. 30-6 p. 3.

[11] Rec. 30-6, p. 4 of 10.

[12] *Id.*

[13] *Id*. p. 6 of 10.

[14] *Id.*

correspondence related to the placement of Aspen Bonds SU13887, SU13888, and SU13889.[15] However, Plaintiffs' disagreed with this understanding, insisting Plaintiffs were requesting all records for any/all bonds related to Defendant's purchase of certain OCS assets from Chevron.[16] In light of the disagreement concerning the scope of the Subpoena, as well as the procedural problems and objectionable scope of the Subpoena, undersigned counsel requested for Plaintiffs to issue a supplemental subpoena, "identifying the specific time frame, bond numbers, and requested documents."[17]   In an effort to remain cooperative, undersigned counsel agreed to accept service of the supplemental request.[18]

On April 4, 2019, Plaintiffs' counsel emailed the Supplemental Subpoena (specifically Supplemental Exhibit A to the Subpoena), requesting for MSW to produce responsive documents by April 25, 2019, to Plaintiffs' counsel's office.[19]   Even though the Subpoena and Supplemental Subpoena were not in compliance with the geographical limits imposed by Rule 45, MSW agreed to begin searching for responsive documents.[20]

As explained in MSW's Opposition, technical and logistical issues prevented MSW from producing supplemental documents on Plaintiffs' unilaterally demanded (immediately in April) timeframe.  Thereafter, MSW's efforts at searching for relevant electronically stored information ("ESI") responsive to Plaintiffs' non-objectionable requests (and specifically the search terms provided in Plaintiffs' Supplemental Subpoena) have resulted in an initial tranche of 51,000 that would require further review by MSW.

---

[15] *Id.*, p. 7 of 10.

[16] *Id.*

[17]   Rec. 30-6, p. 8 of 10.

[18]   *Id.*, p. 9 of 10.

[19] Rec. 30-7.

[20] *Id.*

## LAW AND ARGUMENT

### A.  Rule 45 Requirements for Limiting Improper Subpoenas and Imposing Costs

Rule 45 **mandates** that an overly burdensome subpoena must be quashed or modified to

protect the non-party respondent:

> On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
>
> > (i) fails to allow a reasonable time to comply;
> >
> > (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
> >
> > (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
> >
> > (iv) subjects a person to undue burden.[21]

Thus, Rule 45 **mandates** that a party issuing a subpoena to a non-party "must take

reasonable steps to avoid imposing undue burden or expense on a person subject to the

subpoena."[22]   "To determine whether the subpoena presents an undue burden, [this Court]

consider[s] the following factors: (1) relevance of the information requested; (2) the need of the

party for the documents; (3) the breadth of the document request; (4) the time period covered by

the request; (5) the particularity with which the party describes the requested documents; and (6)

the burden imposed."[23]

In turn, the Court "**must** enforce [the issuing party's] duty [under Rule 45] and impose an

appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a

party or attorney who fails to comply."[24] The protective provisions of Rule 45 have been

---

[21] Fed. R. Civ. P. R. 45(d).

[22] *Id.* at R. 45(d)(1).

[23] *Thibodeaux v. Normand*, 2016 WL 7033674, at *4 (E.D. La. Dec. 1, 2016).

[24] Fed. R. Civ. P. R. 45(d).

recognized as "mandatory cost-shifting provisions"[25] for subpoena compliance in circumstances requiring protection of the subpoenaed party.Indeed, as the notes to Rule 45 clarify, "[a] non-party required to produce documents or materials is protected against significant expense resulting from involuntary assistance to the court… [and the Court may fix] uncertain costs … after the materials have been produced."[26] As such, "Courts addressing the issue of how the costs of subpoena compliance should be allocated have consistently emphasized that non-parties who have no interest in a litigation should not be required to subsidize the costs of a litigation."[27] Thus, "it is appropriate to require the seeking party… to pay the reasonable costs and expenses of complying with the subpoena."[28]

Importantly, "the court retains discretion to decline to compel [or limit] production of requested documents [pursuant to a subpoena] when the request exceeds the bounds of fair discovery, **even if a timely objection has not been made**"[29] - and certainly so in a case like this one where MSW did timely object and now seeks protection against Plaintiffs' overly burdensome and non-proportional subpoena.

### B.  Rule 26 Requirements for Limiting Improper Subpoenas and Imposing Costs

Further, "subpoenas *duces tecum* are discovery devices governed by Rule 45 but also subject to the parameters established by Rule 26."[30]  Accordingly, "[b]oth [Rules] 45 and 26 authorize the court to modify a subpoena duces tecum when its scope exceeds the boundaries of

---

[25] *Broussard v. Lemons*, 186 F.R.D. 396, 398 (W.D. La. 1999).

[26]  Fed. R. Civ. P. 45

[27] *Broussard v. Lemons*, 186 F.R.D. 396, 398 (W.D. La. 1999).

[28]  *Id.*

[29]  *Arthur J. Gallagher & Co.*, 2017 WL 5713361 at *2.

[30]  *Arthur J. Gallagher & Co. v. O'Neill*, 2017 WL 5713361, at *2 (E.D. La. Nov. 27, 2017), *on reconsideration*, 2017 WL 6524044 (E.D. La. Dec. 21, 2017).

permissible discoverable or otherwise violates the parameters of Rule 45."[31]  Thus, the limited

scope of discovery set forth at Rule 26(b) applies to subpoena request to non-parties:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.[32]

Likewise, Rule 26 allows courts to issue protective orders "specifying terms, including time and

place **or the allocation of expenses**, for the disclosure or discovery."[33]

### C.  Rule 37 Requirements for Imposing Costs

Finally, Rule 37 **mandates** that when a party seeks improper discovery, and the

respondent successfully opposes a motion to compel the improper discovery and/or successfully

obtains an order limiting the improper discovery, the Court **must to the respondent award costs

and fees incurred** in opposing/limiting the improper discovery:

> (B) If the Motion Is Denied. If the motion is denied, the court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees.[34]

### D.  Application

Under Rules 45 and 36, Plaintiffs' Subpoena and Supplemental Subpoena are overly

broad, unduly burdensome, non-proportional to the needs of the case, and duplicative insofar as

they request production of materials that Plaintiff has more direct and efficient access to via

direct party discovery from Cox; and/or has already received via its subpoena to Aspen.  Further,

the Subpoenas fail all but 1 of the 6 factors under "undue burden" test under rule 45: they (1)

---

[31] *Goldman v. As You Like It Silver Shop, Inc.*, 2019 WL 718739, at *1 (E.D. La. Feb. 20, 2019).

[32] Fed. R. Civ. P. R. 26(b).

[33] Fed. R. Civ. P. R. 26(c)(1)(B).

seek "irrelevant" materials; (2) do not implicated any substantial "need" of Plaintiffs (insofar as the same materials are available from Cox and/or materials already produced by others); (3) "the breadth of the document request" - actually quantifiable for now at 51,000 documents - is excessive; (5) they do not describe with sufficient "particularity" what is being requested; and (6) they impose an undue "burden" in terms of cost and effort.

### E.  Request for Limitation of Scope

MSW requests that the Court quash/modify the subpoenas and limit their scope to what is relevant: namely, the production of documents and correspondence related to the placement of Aspen Bonds SU13887, SU13888, and SU13889 from August 1, 2015 to present.  These are the only bonds and relevant timeframes at issue in Plaintiffs' claims, and anything beyond that scope is overly broad, unduly burdensome, non-proportional, and irrelevant, particularly given MSW's status as a non-party and the fact that Plaintiff has already sought and obtained the same materials from Cox and other subpoenaed non-parties. Plaintiff has already requested this information from Defendant and Aspen Insurance Company, and now is attempting at a third bite of the apple by going after MSW.   If the production of ESI in response to the Subpoenas (limited as per MSW's request) reveals any additionally relevant issues/concerns, MSW will supplement as may be appropriate.

Specifically, MSW requests quashing of items 19-21, 25-27 of the Supplemental Subpoena; and items 2-5 and 7-9 of the original Subpoena (all of which seek information regarding irrelevant "policies").  Likewise, MSW requests limitation of the ESI search terms in Plaintiffs' Supplemental Subpoena solely to the below-listed terms; and further requests that these limited terms be used to search solely within the 51,000 documents previously compiled:

---

[34]  Fed .R. Civ. P. R. 37(a)(5)(B).f

```
Scott Sewell
Keith Vincent
Petro Marine
Petro Marine Underwriters
Delta Energy
Delta Energy Management
Rodney Dykes
Craig Sanders
Brad Cox
Matthew Raino
Michael Toppi
SU13887
SU13888
SU13889
```

MSW will respond to the balance of the requests/searches in the Subpoena and Supplemental Subpoena, subject to its request in its Opposition, and reiterated here, for an order awarding its costs of response, and attorneys' fees incurred in filing the Opposition, this motion for protective order/to quash, and all related expenses.

Thus, MSW requests a protective order limiting MSW's production (and or modifying/quashing Plaintiffs' subpoenas with respect to the above request limitations) pursuant to:

1. Rule 45(d)(1), which **mandates** that "[t]he court for the district where compliance is required must enforce th[e] duty" of Plaintiffs' counsel to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."

2. Rule 45(d)(2)(B)(ii), which **mandates** that, in light of MSW's proper objections to the Subpoenas, the Court "must protect [MSW as] a person who is neither a party nor a party's officer from significant expense resulting from compliance."

3. Rule 26(c)(1)(B).

**F. Request for Award of Costs and Fees**

Likewise, MSW reiterates, pursuant to Rule 45(d)(3)(C)(ii) and Rule 26(c)(1)(B), its request that the Court determine (as MSW urges here and in its Opposition) compliance with Plaintiffs' document subpoena will impose undue expense on MSW; [35] and, accordingly invoke

---

[35] *See United States v. CBS, Inc.*, 666 F.2d 364 (9th Cir. 1982); *Arthur J. Gallagher & Co. v. O'Neill*, 2017 WL 5713361, at *1 n.1 (E.D. La. Nov. 27, 2017).

the **mandatory** cost-shifting provisions of Rule 45 to shift the cost of compliance to the Plaintiffs and order that costs be assessed after the subpoena recipient produces documents.[36]

Further, MSW requests entry of the **mandatory** award of its costs and attorneys' fees incurred in opposing Plaintiffs' Motion for Contempt and/or successfully limiting Plaintiffs' improper discovery, as required under Rule 37(a)(5)(B).

In sum, MSW urges the Court to grants its instant requests for an award of costs, expenses, and attorney's fees for responding to the improper subpoenas and successfully opposing/limiting them, with the quantum of such costs/expenses/fees to be determined (via affidavit and/or document submissions for the Court's review and approval) at a future date upon full compliance with the Subpoenas as they may be limited by this Court's order in response to the instant proceedings.[37]

## CONCLUSION

MSW timely responded to Plaintiffs' Subpoenas and any delay in obtaining a supplemental document production is purely the result of Plaintiffs' delay in waiting over three months to clarify the specific documents they were seeking; and then propounding another facially improper and overly burdensome set of Subpoena requests.  MSW requests, pursuant to Rules 45 and 26, that the overly broad, non-proportional, and irrelevant scope of Plaintiffs'

---

[36] *CBS, Inc.*, 666 F.2d at 364. *See also* Fed. R. Civ. P. R. 45, Advisory Committee Notes, 1991 Amendment ("[a] non-party required to produce documents or materials is protected against significant expense resulting from involuntary assistance to the court.").

[37] *See* Fed. R. Civ. P. R. 45, Advisory Committee Notes, 1991 Amendment ("The court is not required to fix the costs in advance of production, although this will often be the most satisfactory accommodation to protect the party seeking discovery from excessive costs. In some instances, it may be preferable to leave uncertain costs to be determined after the materials have been produced, provided that the risk of uncertainty is fully disclosed to the discovering party. See, e.g., *United States v. Columbia Broadcasting Systems, Inc.*, 666 F.2d 364 (9th Cir. 1982).

Note also that Rule 45 allows for recovery of attorneys' fees incurred *in seeking and recovering* an award of attorneys' fees. *Id*. ("The liability [of a part or attorney for issuance of an overly burdensome subpoena] may include the cost of fees to collect attorneys' fees owed as a result of a breach of th[e] duty [to avoid imposing undue burden or expense on a person subject to the subpoena].").

Subpoenas be restricted by order of the Court.  These kinds of issues regarding non-party subpoena requests/responses are typically resolved amicably without involving the Court and its limited resources.  Unfortunately, Plaintiffs' improper Subpoenas and motion in this case has not followed that path, and has instead resulted in substantial time, effort and expense by MSW.

Further, MSW further requests under the mandatory provisions of Rule 45(d) and 37(a)(5)(B) that it be awarded reasonable costs and attorneys fees associated with (1) responding to Plaintiffs' improper subpoena discovery; (2) opposing Plaintiffs' improper Motion for Contempt; and (3) limiting (as requested herein) Plaintiffs' improper subpoena discovery; with the quantum of such award to be determined by the Court upon separate submission after MSW's responses are complete.

By:     *Counsel for Non-Party Respondent,*
McGriff, Seibels & Williams, Inc.

          */s/ Christopher Hannan*
Christopher M. Hannan (La. Bar #31765)
Tessa Vorhaben (La. Bar #31293)
BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, PC
201 St. Charles Avenue, Suite 3600
New Orleans, LA 70170
Telephone: (504) 566-8660
Facsimile: (504) 585-6901
Email: channan@bakerdonelson.com
         tvorhaben@bakerdonelson.com