UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PETRO-MARINE UNDERWRITERS, INC. ET AL. | CIVIL ACTION |
| VERSUS | NO. 2:17-cv-09955 |
| COX OPERATING, LLC, ET AL. | SECTION: T(2) |

## ORDER

Before this Court is a Motion for Partial Summary Judgment filed by Petro-Marine

Underwriters, Inc. and Delta Energy Management and Consultants, L.L.C. ("Plaintiffs") seeking

a judgment against Cox Operating, L.L.C. and Cox Oil Offshore, L.L.C. ("Defendants") for past

damages accrued up to and including April 15, 2019.[1] Plaintiffs supplemented their motion seeking

damages up to and including April 15, 2020.[2] Defendants filed a response in opposition[3] and later

filed an amended response in opposition.[4] Plaintiffs thereafter with leave of Court filed a reply in

support of their motion.[5] For the following reasons, Plaintiffs' Motion for Partial Summary

Judgment[6] is **GRANTED.**

## FACTUAL AND PROCEDURAL BACKGROUND

The facts underlying the Court's finding of liability on the part of Defendants were set forth

in the Court's Order of March 31, 2020, and the Court hereby adopts the recitation of the facts

---

[1] R. Doc. 90.
[2] R. Doc. 97.
[3] R. Doc. 99.
[4] R. Doc. 107.
[5] R. Doc. 113.
[6] R. Docs. 90 and 97.

therein.[7]  Essentially, Plaintiffs entered into an agreement ("Letter Agreement") with Defendants for the payment of bond commissions to Plaintiffs in exchange for consulting services they had provided and would provide in assisting the Defendants with the acquisition of certain assets from Chevron USA, Inc. ("Chevron") located in the Gulf of Mexico and the placement of any related bonding.[8] Three surety bonds resulting from the acquisition of the Chevron assets were ultimately placed by a different broker, but Petro-Marine was not designated a co-broker. When Plaintiffs learned of the placement of the bonds, they filed suit asserting Defendants had failed to designate Petro-Marine as a co-broker on the surety bonds so that Plaintiffs would be paid the contracted-for commission payments and, therefore, breached the agreement between them.[9]

After considering competing motions for summary judgment, this Court found liability on the part of Defendants, reasoning that the Letter Agreement obligated Defendants to designate Petro-Marine as a co-broker on the bonds at issue so that Plaintiffs could be compensated according to the agreement.[10] Because Defendants did not designate Petro-Marine as a co-broker on the bonds at issue, and Plaintiffs were not compensated pursuant to the Letter Agreement, the Court concluded Defendants had breached their obligations under the Letter Agreement.[11]

Plaintiffs have filed a motion for partial summary judgment seeking past due damages, namely their share of the bond commissions paid up to and through April 15, 2020. Plaintiffs contend the calculation of the past damages owed is straightforward and simply a mathematical operation. Defendants, however, raise two issues, which they claim legally preclude Plaintiffs from summary judgment. First, Defendants contend they properly terminated the Letter Agreement

---

[7] R. Doc. 86.
[8] R. Doc. 1.
[9] *Id*.
[10] R. Doc. 86.
[11] Id.

under Louisiana law on August 23, 2017, and therefore Plaintiffs are not entitled to any commissions beyond that point in time as a matter of law. Second, Defendants assert Plaintiffs seek damages associated with the placement of bonds that were not part of the Chevron transaction, and thus not covered under the plain language of the Letter Agreement.

## LAW AND ANALYSIS

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[12] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[13] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[14] The party seeking summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact.[15] "Once the movant does so, the burden shifts to the nonmovant to establish an issue of fact that warrants trial."[16]

A federal court sitting in diversity must apply the substantive law of the state in which it sits.[17] Under Louisiana law, the interpretation of a contract is a question of law for the court.[18]

---

[12] Fed. R. Civ. P. 56(a).

[13] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co*., 530 F.3d 395, 398-99 (5th Cir. 2008).

[14] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994).

[15] *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).

[16] *Smith v. Reg'l Transit Auth*., 827 F.3d 412, 420 n.4 (5th Cir. 2016).

[17] *Phillips v. Correct Care Sols., Inc*, No. CV 16-16551, 2017 WL 367663, at *3 (E.D. La. Jan. 25, 2017) (citing *Erie v. Tompkins*, 304 U.S. 64, 71-77 (1938)).

[18] *Tulane Hotel Inv'rs Corp. v. First Fin. Bank, F.S.B.*, No. CIV. A. 84-6127, 1987 WL 15651, at *3 (E.D. La. Aug. 7, 1987) (citing *Chevron U.S.A., Inc. v. Belco Petroleum Corp.,* 755 F.2d 1151, 1153, *reh. denied,* 761 F.2d 695 (5th Cir.), *cert. denied,* 106 S. Ct. 140, 88 L.Ed.2d 116 (1985)).

"Interpretation of a contract is a determination of the common intent of the parties."[19] "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."[20] Words used in a contract must be given their generally prevailing meaning.[21] Each provision of a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole.[22] Although a contract may be worded in general terms, it must be interpreted to cover only those things it appears the parties intended to include.[23]

The Civil Code describes a conditional obligation as one dependent on an uncertain event.[24] An obligation that is subject to a resolutory condition may be immediately enforced but will come to an end when an uncertain event occurs.[25] Conditions may be expressed in a stipulation or implied by the law, the nature of the contract, or the intent of the parties.[26]

**Termination of the Letter Agreement**

The Letter Agreement states in pertinent part:

> In accordance with our [Email] Agreement dated September 9, 2015 between [Cox Entities and Petro-Marine], the parties have agreed to the following: Delta and Petro have already provided, and may continue to provide, certain consulting services to Cox with regard to the acquisition of Chevron assets and on regulatory issues regarding financial assurances to the federal government and oil and gas.
>
> **Compensation due Delta and/or Petro for these services shall be due and payable on the initial placement and any subsequent renewals of any surety bonding placed on behalf of any Cox entity which resulted from the acquisition by Cox of interests in certain assets of Chevron in the Gulf of Mexico in Chevron's 2015 offering, regardless of the brokers or agents**

---

[19] La. Civ. Code art. 2045.
[20] La. Civ. Code art. 2046.
[21] La. Civ. Code art. 2047.
[22] La. Civ. Code art. 2050.
[23] La. Civ. Code art. 2051.
[24] La. Civ. Code art. 1767.
[25] *Id.* The condition is suspensive if it may not be enforced until the uncertain event occurs. *Id.*
[26] La. Civ. Code art. 1768.

**involved, <u>for as long as Cox owns any interest in those assets.</u>** This compensation is due at the initial placement of any such security whenever that individual event occurs, it being recognized that the assets may likely be bonded over a period of time. At the time of an initial placement of any surety relating to the Chevron assets to be acquired on behalf of any Cox entity, Petro-Marine shall receive 65% of the standard commission for the Bond (by the surety company) with the remaining 35% going to the Broker or Agent actually acquiring such surety on behalf of Cox. All reasonable expenses incurred by Delta and Petro, such as requested travel, etc., will be reimbursed by Cox.

Regarding all surety renewals, the split for all compensation received, either as commissions or for service or management fees, split of compensation will be reversed with 65% of all compensation, service fees or gross income received from renewals going to the placing Broker or Agency (or to their interest) and the remaining 35% paid to Petro. All compensation to Petro must be paid within 14 days of payment by Cox or its interests.

**It is further agreed that Petro-Marine Underwriters, Inc., will be made co-broker on all bonds placed on properties purchased from Chevron and is entitled to the above referenced commission structure <u>as long as a Cox related entity has an any [sic] interest in these properties.</u>** Petro-Marine Underwriters, Inc. will be entitled to full access to of all [sic] Cox documents relating to the properties bonded including all financial information concerning bonds, premium paid, consulting fees, monthly bonding accounts, commissions, management, or service fees on those bonds whether in possession of Cox, its Brokers or Agents, its sureties, or regulatory agencies.[27]

Defendants state that, under the plain language of the Letter Agreement, Plaintiffs agreed to provide consulting services to Cox in connection with its acquisition of certain Chevron assets, and that compensation due to Plaintiffs for those services would arise from initial placement and renewals of any surety bonds obtained on behalf of Cox related to the Chevron assets "for as long as Cox owns any interest in those assets."[28] Although Defendants agree that this provision "offers a condition that would ultimately terminate the Letter Agreement – Cox's failure to own the assets at issue," they nonetheless argue that the provision does not state a specified duration or term for

---

[27] R. Doc. 57-2, Ex. A-9 (emphasis added); R. Doc. 59-7.
[28] R. Doc. 99-5, p. 5.

the Letter Agreement.[29] Without such an express provision regarding termination in the Letter Agreement itself, Defendants assert the contract is one of "unspecified duration" and Louisiana Civil Code art. 2024 provides the method and manner of termination for such an agreement.

Plaintiffs counter that the Letter Agreement is subject to a resolutory condition the occurrence of which will end the agreement. That condition, Plaintiffs point out, is Defendant Cox's divesting itself of all assets acquired from Chevron's 2015 offering. Plaintiffs thus argue the Letter Agreement is not of an "unspecified duration," but rather is a contract subject to a resolutory condition, and the obligation continues for exactly how long it specifies in the Letter Agreement – for as long as Defendant Cox owns any interest in the subject assets.

In Louisiana, the term for performance of an obligation is described in Article 1778 of the Civil Code, which provides as follows:

> A term for the performance of an obligation is a period of time either certain or uncertain. It is certain when it is fixed. It is uncertain when it is not fixed but is determinable either by the intent of the parties or by the occurrence of a future and certain event. It is also uncertain when it is not determinable, in which case the obligation must be performed within a reasonable time.[30]

As Defendants point out, La. Civ. Code art. 2024 provides that "[a] contract of unspecified duration may be terminated at the will of either party by giving notice, reasonable in time and form, to the other party."[31] Thus the issue presented is whether the Letter Agreement contains a resolutory condition, which has yet to occur but is determinable, or is a contract of "unspecified duration," which is neither certain, fixed, nor determinable, that may be terminated pursuant to

---

[29] Id.
[30] La. Civ. Code art. 1778.
[31] La. Civ. Code art. 2024.

Article 2024. Defendants assert they complied with Article 2024 in their letter of August 23, 2017,

and thus no commissions were due to the Plaintiffs after that date.[32]

Both parties cite to *Shultz v. Hill*, which explained the interplay of Articles 1778 and 2024

as follows:

> In essence, [Article 1778] describes three different types of scenarios
> concerning the term of a contract: (1) a certain or fixed term; (2) an uncertain but
> determinable term; or (3) an uncertain and undeterminable term. Taking the
> comments and text of Article 1778 together, one concludes that an uncertain term
> that is determinable by reference to the happening of a future event is valid and
> enforceable, even though the date of the happening of that future event cannot be
> known until its occurrence.
>
> We reconcile Article 2024 and 1778 by concluding that Article 2024 can
> only be applied to contracts of "unspecified duration;" i.e., contracts having an
> uncertain and undeterminable term. We further conclude that since Article 1778
> allows the term of a contract to be fixed with reference to the happening of a future
> event, that the term or duration is thereby specified and [Article 2024] is
> inapplicable.[33]

In *Shultz*, the dispute centered on lease commission agreements in which the defendant had

agreed to pay the plaintiff, a licensed real estate broker, a percentage of the lease revenues from

various tenants who had been procured by the plaintiff. The defendant terminated the plaintiff's

employment, but the plaintiff asserted he had a continuing right to collect commissions on the

leases because the payment of commissions was specified as being due "during the initial term,

options, renewals, extensions, assignments or additional leases with the Tenant."[34] The court found

this language was clear that the contract for payment of commissions ended when the tenancy

ended: "In these agreements, the term is fixed by the happening of a future event; i.e., the

---

[32] R. Doc. 107, p. 8.
[33] *Schultz v. Hill*, 02-835, pp. 6-7 (La. App. 1 Cir. 2/14/03), 840 So.2d 641, 645; *writ denied*, 852 So.2d 1043 (La. 9/5/03).
[34] *Schultz, supra*, pp. 7-8, 840 So.2d at 645-46.

termination of the applicable lease."[35] The court concluded Article 2024 was therefore not applicable, reasoning that the commission agreements did not contain an uncertain and undeterminable term, but instead contained an uncertain but determinable term.[36]

In *Caddo Gas Gathering L.L.C. v. Regency Intrastate Gas LLC*, cited by Plaintiffs, the court relied on *Shultz* and reached a similar conclusion.[37] In *Caddo Gas*, the dispute involved an agreement for the transportation of natural gas through a pipeline owned by the defendant. The agreement specified that it "shall remain in force and effect from the date hereof for a term coextensive with the ownership of the [system] by Transporter or its successors or assigns [the defendant]."[38] The defendant argued that the term of the transportation agreement was of unspecified duration which is neither certain, fixed, nor determinable.[39] The defendant asserted the term contemplated a perpetual existence because the term is tied to the ownership or use of the pipeline system by the transporter. The plaintiff gas company argued that the transportation agreement was subject to a resolutory condition based on a definite and ascertainable event, namely, the cessation of ownership or use of the pipeline by the defendant or its successors or assigns.[40] After reviewing Articles 1778 and 2024, as well as the *Schultz* case, the court concluded the term of the gas transportation agreement was determinable by reference to the happening of a future event.[41] Because the agreement was subject to a resolutory condition, the court reasoned,

---

[35] *Schultz, supra*, pp. 6-7, 840 So.2d at 645.
[36] *Id.*
[37] 44,851 (La. App. 2 Cir. 11/12/09), 26 So.3d 233.
[38] *Id.*, p. 2, 23 So.3d at 234.
[39] *Id.*, p. 5, 26 So.3d at 236.
[40] *Id.*, p. 3, 26 So.3d at 235.
[41] Id., pp. 7-8, 26 So.3d at 237. The *Caddo Gas* court also relied on *State ex rel. Guste v. Orkin Exterminating Company, Inc.*, 528 So.2d 198 (La. App. 4th Cir.1988), *writ denied*, 533 So.2d 18 (La.1988), in which the court rejected the defendant's contention that pest control contracts for the lifetime of the treated structure were of indefinite duration and, thus, terminable at the will of either party. The *Guste* court reasoned that the lifetime of a structure is a definite and ascertainable period that renders "the duration of the contract definite and certain." *Id.*, at 201. The *Guste* court further reasoned that "[c]ontracts may be uncertain as to point of time when they will terminate, so long as there is no uncertainty as to the event which will bring about their termination." *Id.*

the agreement was not of "unspecified duration" and thus not subject to termination upon reasonable notice as allowed by Article 2024.[42]

Defendants argue that Article 2024 clearly applies to contracts with an "unspecified duration" and that the duration of the Letter Agreement at issue here is unspecified. Defendants rely on *Williams v. Classic Locksmith, L.L.C.*, for the premise that the Letter Agreement contains an uncertain and "undeterminable term," because it is predicated on a single factor that cannot be calculated, assured, or known.[43] In *Williams*, the agreement was for delivery of mobile homes and travel trailers for FEMA in the wake of Hurricane Katrina, and according to the plaintiff there, contained a term that was determinable by a future event, namely FEMA's continued need for mobile homes and travel trailers.[44] The Fifth Circuit, citing both *Caddo Gas* and *Shultz*, found that the "future event" under Article 1778 was not broad enough to cover the facts of the case, because "FEMA's need for trailers cannot be described as a single definable moment at which the contract would terminate."[45] The *Williams* court concluded that the duration of the agreement there was undeterminable and therefore terminable at will by either party pursuant to Article 2024.[46]

In the instant case, the court finds no merit to Defendant's argument that the term of the Letter Agreement is undeterminable and thus of an "unspecified duration" subject to termination under Article 2024. The Letter Agreement clearly provides that the bond commissions are to be paid to Plaintiffs "for as long as Cox [Defendant] owns any interest in [the subject] assets" and "as long as a Cox related entity has an any [sic] interest in these properties." The Letter Agreement is

---

[42] *Id.*, p. 11, 26 So.3d at 239.
[43] R. Doc. 107, p. 7, citing *Williams v. Classic Locksmith, L.L.C.*, 405 Fed. Appx. 884, 885, 2010 WL 5186775, p. **1 (5th Cir. 2010).
[44] *Williams*, 405 Fed. Appx. at 885, 2010 WL 5186775, p. **1.
[45] *Id.*, p. 886-85, 2010 WL 5186775, p. **1.
[46] *Id.*

therefore subject to a resolutory condition that is clearly determinable, and which will end the agreement. Accordingly, the court finds that Article 2024 is not applicable, and Defendants' assertion that they properly terminated the Letter Agreement pursuant to Article 2024 in August 2017 fails.

**Bonds Outside the Scope of the Letter Agreement**

Defendants next argue that two of the bonds at issue do not fall within the scope of the Letter Agreement, because they are not related to the acquisition of the Chevron assets.[47] Instead, Defendants contend the area-wide bond and the right of way bond are only required because of Defendant's operations on the outer continental shelf, and thus are not specifically or directly related to the acquisition of the Chevron assets.[48] However, based on the summary judgment evidence available to the Court, it is clear that Defendants were, if only for the first time, required to obtain such "operational" bonds to operate the assets to be acquired from Chevron. There is no genuine factual dispute that, prior to the Chevron acquisition, Defendants had not operated on the outer continental shelf and, therefore, had not previously been required to post such bonds. Although Defendants may have subsequently obtained assets from other sources requiring the existence of such "operational" bonds, there is no genuine dispute that placement of the $3,000,000 area-wide bond and the $300,000 right-of-way bond initially "resulted from the acquisition by Cox of interests in certain assets of Chevron in the Gulf of Mexico in Chevron's 2015 offering," as set forth in the Letter Agreement. Accordingly, the Court finds that the performance bond, as well as the area-wide bond and the right-of-way bond, all "resulted from the acquisition" of the Chevron assets. Defendants' assertion to the contrary fails.

---

[47] R. Doc. 107, pp. 10-12. Aspen Bonds SU13888 and SU13889.
[48] *Id.*

## CONCLUSION

Other than the two legal arguments discussed above, Defendants do not seriously contest the bond commission amounts that Plaintiffs claim they are owed, at least through April 2020. The Court thus finds that Plaintiffs have established there are no genuine issues of material fact and they are entitled to a judgment awarding past damages as a matter of law. For the reasons set forth above,

**IT IS ORDERED** that Plaintiffs' Motion for Partial Summary Judgment[49] is **GRANTED.** Plaintiffs are hereby directed to provide this Court with a proposed judgment to that effect.

**New Orleans, Louisiana**, on this __5th__ day of January 2021.

**GREG GERARD GUIDRY**
**UNITED STATES DISTRICT JUDGE**

---

[49] R. Docs. 90 and 97.